**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**


EUGENE T. CURTIS,

                    Petitioner,                    Case Number: 03-72301

v.                                          HONORABLE ARTHUR J. TARNOW

BLAINE LAFLER,

                    Respondent.

_____/

## <u>OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS</u>

Petitioner Eugene T. Curtis has filed a *pro se* petition for a writ of habeas corpus.

Petitioner is currently incarcerated at the Saginaw Correctional Facility in Freeland, Michigan.

He challenges the constitutionality of his 1997 convictions for two counts of first-degree

criminal sexual conduct and one count of aiding and abetting criminal sexual conduct. For the

reasons set forth below, the Court denies the petition.

### I.  Facts

Petitioner's convictions arise from events that occurred on September 3, 1996, in the

County of Lapeer. Christina Kaake[1] testified that on that date she was assaulted by Petitioner,

Justin Marsh, and Josh Miller. She had dated Marsh and was friends with Miller. She met

Petitioner through Marsh and Miller a few weeks before the assault.

On the evening of September 3, 1996, she was walking to visit a friend, Garret Wright,

when Marsh and Miller pulled their car up beside her and offered a ride. She declined, but

---

[1] Because Christina Kaake's mother, Vera Kaake, also testified, the Court will refer to
both women by their first names.

Marsh exited the vehicle, grabbed her arm, and forced her into the car. Christina testified that both Marsh and Miller were smoking marijuana. Miller drove to a state game area because, according to Miller, they had to check on some marijuana plants. Miller walked into the woods, leaving her in the vehicle with Marsh. Moments later, Marsh grabbed her arms while Petitioner entered the vehicle. Petitioner drove the vehicle deeper into the woods.

Christina testified that Petitioner handed Miller a long knife and told Miller that if Christina tried to flee he should stab her. Petitioner said he was going to have fun with her and then kill her. Petitioner drove around for a while until it got dark outside. He then parked the car and he, Miller and Marsh exited the vehicle. Petitioner then reentered the car and told her to take off her clothes. Christina testified that she acquiesced because she was frightened. Petitioner then raped her. Christina testified that, after Petitioner raped her, Miller entered the car and also raped her. Marsh then climbed into the back seat and demanded oral sex. He tied a rope around her neck and began choking her. When she struggled, Marsh told her to stop fighting. He then removed the rope from her neck and left the car. After a few moments, all three men reentered the car and Petitioner informed her, "We all voted you dead." Tr., 5/7/97, p. 110.

Christina testified that Petitioner drove to a Taco Bell, where she was forced to hide under a blanket while they went through the drive-through window. The men made a few additional stops for food and alcohol. At one point, she was left alone in the car with Marsh and did not see any evidence of the knife. She testified that she did not try to escape because she feared they would kill her.

Petitioner drove back to the state game area where he forced her to drink alcohol. Petitioner and Miller then raped her again. Christina testified that she passed out and awoke briefly to find herself in the shower at Marsh's home. Petitioner was in the shower with her. She then passed out again, waking up a second time on a couch at Marsh's home. Christina testified that she vomited approximately seven times and convinced Marsh and Miller to take her to the hospital. When she awakened after again losing consciousness, she was in a hospital room with Marsh. She acknowledged that she told police who interviewed her at the hospital that a man named George had raped her. She did not accuse Petitioner, Marsh and Miller of raping her until a detective came to her home the following day.

Christina's mother, Vera Kaake, testified that, on September 3, 1996, Christina left home at approximately 5:30 p.m., to visit a friend, Garret Wright. Christina was told to be home by 9:30 p.m. When Christina was not home by that time, Vera went to Wright's home. After discovering that Wright had not seen Christina, Vera and Wright searched for Christina. When they could not find her, Vera returned home and went to bed. She was awakened at approximately 4:00 a.m., by Petitioner, who told her that Christina was in the hospital. Vera went to the hospital and brought Christina home.

Justin Marsh, fifteen-years old at the time of trial, testified that Christina was his girlfriend in August and September 1996. Marsh, Miller, and Petitioner were friends and would often drink alcohol and smoke marijuana together. Marsh testified that he and Miller picked up Christina at approximately 5:00 p.m., on September 3, 1996. Marsh and Miller then drove to the state game area to check on marijuana plants. Petitioner was at the state game area. Petitioner

3

got into the vehicle with Marsh and Christina and ordered Marsh to exit the vehicle. Marsh and Miller smoked a cigarette while Petitioner was in the car with Christina. When Petitioner exited the vehicle, Marsh observed him zippering his pants. Marsh heard Petitioner tell Miller, "If she runs, catch her and kill her." Tr., 5/8/97, p. 136. Marsh testified that Petitioner told Miller to get in the car and "do her or I'm going to do you." *Id.* at p. 138-39. Marsh saw Miller enter the vehicle but did not observe what occurred inside the vehicle, he did note, however, that Miller was pulling up his pants when he exited the vehicle. Marsh testified that Petitioner then told him to kill Christina or Petitioner would kill him. Petitioner gave Marsh some twine. Marsh got in the vehicle and forced Christina to perform oral sex on him. He also wrapped the twine around her neck but testified that he was unable to kill her.

Marsh testified that the group then left the game area and obtained food and alcohol. They then returned to the game area where, Marsh testified, Petitioner order Marsh and Miller out of the vehicle and had sex with Christina. After returning to his home with Christina, Christina vomited several times. He, Petitioner and Miller took her to the hospital. Petitioner advised Marsh to tell hospital personnel that he came home to find Christina intoxicated in his driveway and that a man named "George" had assaulted her.

Marsh testified the was convicted in probate court of first-degree criminal sexual conduct and attempt to do great bodily harm less than murder.

Josh Miller also testified for the prosecution. He testified that he was seventeen-years old at the time of the incident. His testimony was generally consistent with Marsh's. Miller initially told police that a man named "George" had assaulted Christina. Eventually, he told

police the entire story, implicating himself, Marsh, and Miller. He was charged with first-degree criminal sexual conduct. He testified pursuant to a plea agreement which required him to testify against Marsh and Petitioner in exchange for the charge against him being reduced to second-degree criminal sexual conduct.

Petitioner testified in his own defense. He testified that he, Marsh and Miller were friends. On the date of the incident, Christina and Marsh were fighting and Marsh had pulled on Christina's necklace causing a mark on her neck. He testified that he, Marsh, Miller, and Christina went to the game park area to check on marijuana plants and then stopped for food and alcohol. Before going through the drive-through at Taco Bell, Petitioner retrieved a blanket from the vehicle's trunk because Christina's mother did not want her to associate with Marsh or Miller and she did not want anyone at Taco Bell to recognize her and tell her mother she was with them. Christina consumed a large amount of alcohol and, after being taken to the Marsh home, became very sick. Eventually, Petitioner decided to take her to the hospital. Petitioner testified that Christina came up with the "George" story on her own. He denied ever giving Marsh a piece of twine on the day of the assault.

## II. Procedural History

Following a jury trial in Lapeer County Circuit Court, Petitioner was convicted of two counts of first-degree criminal sexual conduct, and one count of aiding and abetting first-degree criminal sexual conduct. On June 9, 1997, he was sentenced as a fourth habitual offender to twenty-five to forty years imprisonment for each count, to be served concurrently.

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, presenting the following claims:

I.      The trial court committed reversible error by admitting into evidence defendant's statement, which was taken in violation of defendant's Fifth and Sixth Amendment rights.

II.     The trial court abused its discretion in allowing the prosecution to amend the information during trial to include an additional charge without the benefit of a preliminary examination in violation of defendant's due process rights.

III.    The trial court abused its discretion by allowing the prosecutor to endorse known late witnesses less than seven days prior to trial.

IV.     The trial court erred and committed reversible error in allowing improper rebuttal testimony.

The Michigan Court of Appeals affirmed his convictions and sentences.  *People v. Curtis*, No. 204731 (Mich. Ct. App. Feb. 12, 1999).  Petitioner filed a delayed application for leave to appeal the Court of Appeals' decision in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals.  The Michigan Supreme Court denied leave to appeal.  *People v. Curtis*, 461 Mich. 912 (Mich. Nov. 9, 1999).

On August 28, 2000, Petitioner filed a motion for relief from judgment in the trial court, presenting the following claims:

I.      There was a conflict of interest by trial counsel in the representation of Ferrara and Curtis, that violated defendant's constitutional rights.

II.     There was a conflict of interest by trial counsel in the representation of Miller and Curtis, that violated defendant's constitutional rights.

III.    Trial counsel was ineffective where he failed to do proper investigation, which deprived defendant of his constitutional rights and a fair trial.

IV.     Trial counsel was ineffective where he failed to subject the prosecutor's case to meaningful adversarial testing, that deprived defendant of his constitutional rights.

V.      The trial court denied defendant due process and a fair trial where it abused its discretion.

VI.     Trial court abused its discretion in the direct examination of state witness Ms. Fay Marsh.

VII.    The trial court erred in not sequestering prosecution rebuttal witness Ms. Angela Alward.

VIII.   The defendant was denied a fair trial where the prosecutor engaged in improper []conduct that violated defendant's constitutional rights.

IX.     The trial court admitted improper rebuttal evidence in the perjured testimony of medical technologist Ms. Dennis Perry, that violated defendant's constitutional rights.

X.      Defendant was denied the effective assistance of appellate counsel in violation of his constitutional rights.

The trial court denied the motion for relief from judgment on September 13, 2000.

*People v. Curtis*, No. 96-5923 (Lapeer County Circuit Court Sept. 13, 2000).

Petitioner filed an application for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals, presenting the same claims presented to the trial court. The Michigan Court of Appeals denied leave to appeal. *People v. Curtis*, No. 230499 (Mich. Ct. App. May 9, 2001). Petitioner then attempted to file a delayed application for leave to appeal in the Michigan Supreme Court, but the application was rejected for filing on July 31, 2001, because it was filed beyond the applicable limitations period. *See* Affidavit of Corbin R. Davis, Clerk, Michigan Supreme Court, dated Sept. 23, 2003.

Petitioner filed a second motion for relief from judgment in the trial court on November

21, 2001, presenting the following claims:

I.     Prosecutor Geoffrey Stewart, knowingly violated M.C.R. 6.200 under discovery, to introduce inadmissible evidence and perjured testimony at this defendant's trial in violation of defendant's constitutional right to due process, under the Fourteenth Amendment, which also constituted prosecutorial misconduct and malicious prosecution.

II.    Prosecutor Geoffrey Stewart, admitted known inadmissible evidence at this defendant's trial in violation of . . . defendant's constitutional right to due process.

III.   Prosecutor Geoffrey Stuart admitted known manufactured perjured testimony at defendant's trial on May 7, 1997, and in final arguments on May 13, 1997, in violation of . . . defendant's due process under the Fifth and Fourteenth Amendments and numerous cited cases.

IV.    Trial counsel Mr. Earl H. Morgan, failed to suppress the inadmissible evidence in the illegally seized DNA and medical evidence presented at defendant's trial, . . . constitut[ing] ineffective assistance of counsel under numerous cited case laws.

V.     Trial counsel Mr. Earl H. Morgan failed to expose the mental illness of the alleged victim in her suicide attempt in May of 1996, constituting ineffective assistance of counsel under defendant's Sixth Amendment right to effective assistance of counsel.

VI.    Trial counsel Mr. Earl H. Morgan, failed to expose the perjured testimony of Nurse Pat Parent in violation of . . . defendant's constitutional right under the Fifth and Fourteenth Amendments as to due process, and under the defendant's Sixth Amendment right to effective assistance of counsel.

VII.   Attorney Aaron M. Cassell failed to expose the newly discovered perjured testimony by Nurse Pat Parent, and the newly discovered undisclosed DNA medical documentation presented by prosecutor Geoffrey Stewart at defendant's evidentiary hearing held on January 28, 2002, denying defendant his constitutional right to due process under the Fourteenth Amendment, and his constitutional right to effective assistance of counsel under the Sixth Amendment.

VIII.  Attorney Aaron M. Cassell failed to file a formal complaint to the trial court for prosecutorial misconduct, . . . in violation of . . . defendant's constitutional right

IX. Attorney Aaron M. Cassell failed to file defendant's application for leave to appeal, to the Court of Appeal, in violation of . . . defendant's right to due process under the Fourteenth Amendment and effective assistance of counsel under the Sixth Amendment.

X. Attorney Aaron M. Cassell, knowingly lied to defendant and fed him false information, in violation of defendant's constitutional Sixth Amendment right to effective assistance of counsel.

That motion was denied on January 7, 2002. *People v. Curtis*, No. 96-5923 (Lapeer County Circuit Court Jan. 7, 2002).

Petitioner then filed an application for leave to appeal the trial court's denial of his motion for relief from judgment in the Michigan Court of Appeals, presenting the same claims presented to the trial court. The application was dismissed for failure to pursue the case in conformity with the rules. *People v. Curtis*, No. 243157 (Mich. Ct. App. Oct. 1, 2002).

Petitioner then filed a delayed application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. He also filed a motion to add the following issues to his application for leave to appeal:

XI. The prosecution, through its agents, . . . [withheld] a grant of immunity to . . . Mr. Joshua Miller and Mr. Justin Marsh, violating defendant Curtis's constitutional rights under the Due Process [Clause] of the Fourteenth Amendment and numerous cited case laws.

XII. The prosecutor's office . . . solicited known false testimony at defendant's trial, in violation of defendant's Fourteenth Amendment rights to due process.

On April 29, 2003, the Michigan Supreme Court issued an order denying Petitioner's

application for leave to appeal and denying his motion to add issues to his application. *People v.*

*Curtis*, No. 122753 (Mich. Apr. 29, 2003).

Petitioner then filed a petition for a writ of habeas corpus, presenting the following

claims:

I.     It is the opinion of Petitioner that the Michigan Supreme Court, denied Petitioner his constitutional due process right to exhaust his appellate remedies under M.C.R. 6.500, as guaranteed in the Fourteenth Amendment.

II.     The prosecution, through its agents Lt. Gary Parks and Sgt. Nancy Stimson, violated discovery under M.C.R. 6.200(B)(5), by withholding a grant of immunity to codefendant's turn state witnesses Mr. Joshua Miller and Mr. Justin Marsh, violating Petitioner Curtis's constitutional rights under the Fifth and Fourteenth Amendments as to due process.

III.     The prosecutor's office, through its agent Lt. Gary Parks, solicited known false testimony at Petitioner's trial, in violation of Petitioner's Fourteenth Amendment rights to due process.

IV.     Prosecutor Geoffrey Stuart, knowingly violated M.C.R. 6.200 under discovery, to introduce inadmissable evidence and false testimony at Petitioner's trial in violation of Petitioner's constitutional right to due process under the Fourteenth Amendment.

V.     Prosecutor Geoffrey Stuart admitted known inadmissible evidence at Petitioner's trial in violation of Petitioner's Fifth and Fourteenth Amendment right to due process.

VI.     Prosecutor Geoffrey Stuart, admitted known false testimony in Petitioner's trial on May 7, 1997, and final arguments on May 13, 1997 in violation of Petitioner's Fifth and Fourteenth Amendment rights to due process.

VII.     Trial counsel Mr. Earl Morgan, failed to suppress the inadmissible evidence in the illegally seized DNA and medical evidence presented at Petitioner's trial, in violation of Petitioner's Sixth Amendment right to effective assistance of counsel.

VIII.   Trial counsel Mr. Earl Morgan failed to expose the mental illness of the alleged
        victim in her suicide attempt in May of 1996, thus constituting ineffective
        assistance of counsel under Petitioner's Sixth Amendment right to effective
        assistance of counsel.

IX.     Trial counsel Mr. Earl H. Morgan, failed to expose the perjured testimony of
        Nurse Pat Parent in violation of Petitioner's Sixth Amendment right to effective
        assistance of counsel.

X.      Evidentiary hearing attorney Aaron M. Cassell failed to expose the newly
        discovered evidence in the undisclosed forty-one pages of medical documentation
        disclosed on Aaron M. Cassell demand for discovery in Petitioner's evidentiary
        hearing held on January 28, 2002, denying Petitioner his constitutional rights to
        due process under the Fourteenth Amendment and effective assistance of counsel
        under the Sixth Amendment.

XI.     Evidentiary hearing attorney Aaron M. Cassell failed to file a formal complaint to
        the trial court for prosecutorial misconduct, under M.C.R. 6.201 thus denying
        Petitioner his constitutional rights to due process, and effective assistance of
        counsel under the Sixth and Fourteenth Amendment.

XII.    The trial court erred in not sequestering prosecution rebuttal witness Angela
        Alward and denied Petitioner a fair trial.

XIII.   The trial court committed reversible error by admitting into evidence defendant's
        statement, which was taken in violation of defendant's Fifth and Sixth
        Amendment rights.

XIV.    The trial court abused its discretion in allowing the prosecution to amend the
        information during trial to include an additional charge without the benefit of a
        preliminary examination in violation of the defendant's due process rights.

XV.     The trial court abused its discretion by allowing the prosecutor to endorse late
        witnesses less than seven days prior to trial.

XVI.    The trial court erred as a matter of law and committed reversible error in allowing
        improper rebuttal testimony.

XVII.   The trial court denied defendant due process and a fair trial where it abused its
        discretion.

XVIII.  Evidentiary hearing counsel Aaron M. Cassell, knowingly lied to Petitioner

and fed him false information, in violation of Petitioner's constitutional right to effective assistance of counsel.

On September 14, 2004, the Court issued an opinion and order holding the petition in abeyance and administratively closing the case because Petitioner failed to exhaust his state court remedies with respect to his second and third claims for habeas relief.

Petitioner filed a motion for relief from judgment in the trial court claiming that the prosecution improperly withheld information that it granted immunity to witnesses Joshua Miller and Justin Marsh, in exchange for their testimony against Petitioner and that the prosecutor solicited known false testimony at Petitioner's trial, by allowing Miller to testify incorrectly regarding his plea agreement. The trial court permitted Petitioner to file a successive motion for relief from judgment and denied the motion. *People v. Curtis*, No. 96-005923-FC (Lapeer County Cir. Ct. Apr. 6, 2005).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

I.      The prosecution through its agents Lt. Gary Parks and Sgt. Nancy Stimson, violated discovery under M.C.R. 6.200(B)(5), by withholding a "grant of immunity" to codefendants turn state witnesses Mr. Joshua Miller and Mr. Justin Marsh, violating defendant Curtis's constitutional rights under the Due Process Clause of the Fifth and Fourteenth Amendment and numerous cited case laws.

II.     The prosecutor's office, through its agent Lt. Gary Parks, solicited false testimony at defendant's trial, in violation of defendants Fifth and Fourteenth Amendment rights to due process.

III.    The trial court abused its discretion in denying defendants evidentiary hearing, in the "Brady" rule violation by the prosecution, thus denying defendant his constitutional due process rights under the Fifth and Fourteenth Amendments.

III-B. The trial court abused its discretion in denying defendant's "show cause" motion against he clerk of the court, in there "back dating" of defendant's M.C.R. 6.502(G)(2) motion for relief from judgment, to violate defendants time for failing as order[ed] by U.S. Federal District [Judge] Arthur Tarnow, thus perpetrating a fraud upon the court and denying defendant due process of law.

III-C. The trial court abused its discretion in the "back dating" of its order denying defendant's motion to disqualify, thus perpetrating a "fraud upon the court" and denying defendant due process of law.

IV. Chief Judge Nick O. Holowka abused his discretion in his failure to rule on defendant's motion to review the trial court's denial of defendants disqualification motion and disqualify Judge Higgins under M.C.R. 2.003(C)(3)(a), thus denying defendant his constitutional rights to due process.

V. Chief Judge Nick O. Holowka abused his discretion in his failure to rule on defendant's "Motion to Quash" thus denying defendant due process of law.

The Michigan Court of Appeals denied leave to appeal. *People v. Curtis*, No. 265248 (Mich. Ct. App. March 16, 2008).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims raised in the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Curtis*, No. 131052 (Mich. July 31, 2006).

Petitioner then filed a motion to lift the stay of his habeas corpus proceeding. The Court granted the motion and directed Respondent to file a supplemental responsive pleading, which Respondent has now done.

### III.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

13

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application occurs" when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 410-11.

## IV. Analysis

### A. Procedural Default

Respondent argues that the majority of Petitioner's claims are barred from federal habeas corpus review because they are procedurally defaulted.

"[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003), *citing*

*Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 1523 (1997).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In this case, the Court finds that the interests of judicial economy are best served by addressing the merits of these claims.

### B.  Michigan Supreme Court's Rejection of Pleading

The Michigan Supreme Court rejected for filing as untimely Petitioner's application for leave to appeal from the trial court's denial of his first motion for relief from judgment. Petitioner argues that the Michigan Supreme Court's ruling was incorrect and violated his right to due process.  It is for state courts to interpret and enforce state laws and rules on issues such as the timeliness of a state court filing.  *Israfil v. Russell*, 276 F.3d 768, 771-72 (6th Cir. 2001) (holding that district court properly deferred to state court's finding as to whether post-conviction motion was filed according to state's timeliness requirements).  Thus, the Court finds that this claim is not cognizable on federal habeas review.

### C. *Brady* Violations

Petitioner's second claim for habeas corpus relief alleges that the prosecutor failed to fully disclose a plea agreement made with a key prosecution witness, Joshua Miller, and that the prosecution failed to disclose that immunity from prosecution was granted to Miller and Justin Marsh for a breaking and entering incident.

The prosecution's alleged failure to disclose a plea agreement alleges a violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Brady*, the Supreme Court established that a

prosecutor's failure to disclose evidence constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." *Giglio v. U.S.*, 405 U.S. 150, 154 (1972) (internal quotation omitted). The failure of the prosecution to divulge an agreement with a witness regarding future prosecution violates due process where the witness's testimony could "'in any reasonable likelihood have affected the judgment of the jury.'" *Id.*, *quoting Napue v. Illinois*, 360 U.S. 264, 271 (1959).

Justin Marsh testified for the prosecution. He testified that Petitioner orchestrated the entire assault and told Marsh to kill the victim or Petitioner would kill Marsh. Petitioner ordered Marsh to force the victim to perform fellatio. Petitioner was aggravated with Marsh when he was unable to kill the victim. Marsh was convicted of first-degree criminal sexual conduct and assault with intent to do great bodily harm less than murder. Marsh testified that he was not offered any leniency or plea bargain in exchange for his testimony.

Joshua Miller testified that he was with Marsh and Petitioner when they picked the victim up on the day of the crime. He testified that he overheard Petitioner tell Kaake that his people had "voted her dead." Tr., 5/9/97, p. 4. Miller and Marsh exited the car at one point when it was parked in a state park. Petitioner entered the back seat where Kaake was sitting. Approximately fifteen minutes later, Kaake exited the vehicle, while buckling his belt. Petitioner then told Miller it was his turn. Miller entered the car and had intercourse with Kaake. Marsh then entered the vehicle with a piece of twine. After fifteen minutes, Marsh exited the vehicle and reported

that he "couldn't do it." Tr., 5/8/97, p. 292. Miller testified that he had received a plea agreement in exchange for his testimony. In exchange for his testimony, one charge of first-degree criminal sexual conduct against him was dismissed and the second was reduced to second-degree criminal sexual conduct. He was sentenced to 3-1/2 to 15-1/2 years imprisonment.

Petitioner claims that both Miller and Marsh testified falsely. He claims that Miller failed to disclose the full terms of his plea agreement and Marsh failed to disclose that he was granted immunity from prosecution for an unrelated breaking and entering. Petitioner's claims are based upon Miller's affidavit, executed on December 19, 2002, over four years after the trial concluded. In his affidavit, Miller recants almost all of his testimony which incriminated Petitioner. He also states that he and Marsh were granted immunity from prosecution for the breaking and entering of a storage unit in Attica, Michigan. Miller also denies that Petitioner ever used a weapon to perpetrate a sexual assault on Christina Kaake, or gave Marsh a rope and ordered him to choke Christina.

The trial court, in denying Petitioner's motion for relief from judgment, held that Miller's affidavit did not warrant a new trial. The trial court concluded that the evidence before the court did not support a finding that the prosecutor failed to disclose the full terms of the plea agreement. First, the trial court noted that the prosecutor denied any such agreement. Second, the plea agreement letter did not reference any immunity granted for an uncharged breaking and entering. Third, Miller's affidavit was insufficient to establish any knowledge on Marsh's part.

The trial court further noted that the jury was aware that both Miller and Marsh were convicted felons and that Miller was receiving a benefit for his testimony.

The Court agrees with the state court's conclusion that the evidence offered by Petitioner is insufficient to establish that an undisclosed plea agreement existed or to prove that his trial testimony was perjured. "Recanting affidavits . . . are viewed with extreme suspicion." *U.S. v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991). In this case, such suspicion is warranted. The affidavit lacks any explanation for Miller's motivation for his initial testimony or the subsequent change in his testimony. It is inconsistent with other, substantial evidence in the trial record. Moreover, even if Miller's deal also involved an agreement not to prosecute for the breaking and entering, the Court finds no reasonable likelihood that including this omitted aspect of the plea agreement could have impacted the judgment of the jury. The jury already was aware that Miller was receiving a significant benefit for his testimony. The Court finds that knowledge of any breaking and entering-related agreement would not have given the jury any greater reason to question Miller's motivation for testifying.

### D. Solicitation of False Testimony

Petitioner alleges that the prosecutor's office, through its agent, Lieutenant Gary Parks, solicited false testimony from Joshua Miller.

"[D]eliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972) (internal quotation omitted). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360

U.S. 264, 269 (1959). A conviction obtained by the knowing use of perjured testimony must be set aside "if 'the false testimony could . . . in any reasonable likelihood have affected the judgment of the jury . . .'" *Giglio*, 405 U.S. at 154, *quoting Napue*, 360 U.S. at 271. *See also United States v. Agurs*, 427 U.S. 97, 103 (1976). In order to prove this claim, a Petitioner must show that

> (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false.

*Coe v. Bell,* 161 F.3d 320, 343 (6th Cir. 1999). Petitioner has the burden of proving a *Brady* violation. *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir.2000) (citing *Moore v. Illinois*, 408 U.S. 786, 794-95 (1972)).

Petitioner cites the following portion of Miller's Affidavit (which is drafted in question and answer format) in support of his claim that Lieutenant Parks solicited false testimony from Miller:

> Question 9
>
> Did Lt. Gary Parks, come to the Lapeer County Jail prior to your testimony against Mr. Eugene T. Curtis, and 'direct' you in the testimony that you were to give 'or' know that you were going to give false testimony at Mr. Eugene T. Curtis' trial? *He never told me what to say, but said that the worse Gino sounds the better I will come out in the end. JDM*
>
> Question 10
>
> To your knowledge, did prosecutor Justus C. Scott, know of these visit [sic] of Lt. Gary Parks? *He must have some knowledge, it took place in Gary Parks office. JDM*

Miller Affidavit at pp. 2-3 (italics indicate handwritten text).

Petitioner has not shown that any statements made by Miller or Marsh at trial were actually false. Nor does Miller's affidavit demonstrate that Parks encouraged Miller to perjure himself. As noted by Miller, Parks did not tell Miller what to say when he testified. Even if Parks encouraged Miller to focus on certain aspects of his testimony rather than others, this does not establish that Parks suborned perjury or that Miller testified falsely. Therefore, this habeas claim is meritless.

### E. Prosecutorial Misconduct

In his fourth, fifth, and sixth claims for habeas relief, Petitioner alleges that the prosecutor engaged in misconduct. Specifically, Petitioner alleges that the prosecutor (i) failed to disclose the victim's medical reports; (ii) admitted inadmissible evidence (the victim's medical reports); and (iii) elicited false testimony from witness Patricia Parent.

"Prosecutorial misconduct may warrant habeas relief only if the relevant misstatements were so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process deprivation." *Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999). The determination whether the trial was fundamentally unfair is "made by evaluating the totality of the circumstances." *Angel v. Overberg*, 682 F.2d 605 (6th Cir. 1982). The Court must examine "'the fairness of the trial, not the culpability of the prosecutor.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997), (*quoting Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)).

Petitioner's first two claims of prosecutorial misconduct are somewhat confusing. He appears to argue both that the prosecutor improperly admitted testimony at trial regarding the

victim's medical report and that he failed to disclose this report to Petitioner's counsel prior to or during trial. The claim that the evidence was improperly admitted is based upon an argument that the prosecutor failed to properly subpoena the medical report therefore rendering it inadmissible. It does not appear that the report was actually admitted into evidence at trial, but the contents of the report were referenced and a witness reviewed the report to refresh her recollection. Petitioner's attorney did not object to testimony regarding the report, nor did he claim that a copy of the report had not been received. In response to Petitioner's motion for relief from judgment, the prosecutor's office represented that it timely produced a copy of the victim's medical records to defense counsel. Considering all of these circumstances, Petitioner has failed to show that he did not receive a copy of the victim's medical records and he has failed to shown that testimony regarding those records was improper. Moreover, assuming he did not receive a copy of the records prior to trial, he knew of their existence once trial commenced and failed to object to the prosecutor's failure to produce them. Therefore, the Court concludes that Petitioner has failed to show that the prosecutor committed misconduct in connection with the medical records.

Finally, Petitioner claims that the prosecutor knowingly admitted false testimony when he allowed emergency room nurse Patricia Parent to testify that, while being treated in the emergency room, the victim made a spontaneous utterance that "They choke[d] her [and] poured booze down her throat." Tr., Vol. I, p. 218. The use of the plural pronoun contradicted the victim's other emergency room reports that one person, rather than multiple people, assaulted her. Petitioner argues that Parent's trial testimony was obviously false because she did not

record the victim's statement in the emergency patient report or the assault victim report that she
completed shortly after treating the victim.

The omission of any information regarding multiple assailants from Parent's report does
not clearly establish that her trial testimony was perjured. *See United States v.* Griley, 814 F.2d
967, 971 (4th Cir.1987) ("Mere inconsistencies in testimony by government witnesses do not
establish the government's knowing use of false testimony."). Defense counsel was free to cross-
examine her regarding the omission of this information from her written report. But, this
omission does not clearly establish that her testimony was false. Therefore, Petitioner has failed
to show that the prosecutor knowingly elicited false testimony in this regard.

### F. Alleged Ineffective Assistance of Counsel

Petitioner argues that his defense counsel was ineffective, thus violating his Sixth
Amendment right to the effective assistance of counsel. Petitioner argues that counsel was
ineffective in: (i) failing to suppress illegally seized DNA and other medical evidence; (ii) failing
to expose the victim's mental illness and May 1996 suicide attempt; and (iii) failing to expose
the perjured testimony of Patricia Parent.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-
pronged test for determining whether a habeas petitioner has received ineffective assistance of
counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires
a showing that counsel made errors so serious that counsel was not functioning as the 'counsel'
guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate
specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he

proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'"  *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted).  However, when assessing counsel's performance, the reviewing court should afford counsel great deference.  *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner.  A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial."  *Id.*

First, Petitioner claims that his attorney was ineffective in failing to move to suppress forty-one pages of the victim's medical history because it was illegally seized.  He also argues both that defense counsel was not presented with a copy of the medical history before or during trial and that portions of the medical history were referenced during trial.

Petitioner's claim that the medical report was illegally seized appears to rest upon the victim's mother's signature on the Assault Victim Medical Report, which includes a section titled "Permission for Interview, Examination and Release of Information."  In that section, there are two separate sub-sections.  The first grants permission to medical staff to "perform a medical

interview and a physical examination as may be necessary." The second grants permission to "release the results of this examination and laboratory specimens and clothing to the proper legal authorities." The box preceding the first category is checked; the box preceding the second category is not. Petitioner argues that, consequently, the medical report was illegally seized. The failure to check the box allowing the release of these records does not establish that the victim did not voluntarily release her records at some other time. In addition, the medical records, while used to refresh a witness's recollection, were never admitted into evidence.

Petitioner's argument that the medical history was not provided to defense counsel is based upon a claim made in a motion for relief from judgment filed by his attorney (not his trial attorney) several years after his convictions. In the motion for relief from judgment, retained attorney Aaron M. Cassell stated that, in response to a September 11, 2001, discovery request, the prosecuting attorney produced "forty-one pages of documents which were *probably* never previously available to Defendant's counsel." Petitioner's Motion for Relief from Judgment, dated 11/21/01, at 3 (emphasis supplied). Cassell does not explain why he assumed that these documents were not previously produced. In response to the motion for relief from judgment, the prosecutor represented that defense counsel was timely provided with the requested medical documentation. The trial court transcript supports the prosecutor's claim. The medical reports are referenced several times during the trial and defense counsel does not lodge an objection that the records have not been disclosed. Therefore, Petitioner has failed to show that defense counsel was ineffective in failing to argue that the medical records were not produced.

Second, Petitioner argues that counsel was ineffective in failing to expose the victim's mental illness and her May 1996 suicide attempt. The victim's learning disabilities and behavioral issues at home were fully explored during the victim's mother's testimony. In addition, Petitioner fails to show how the victim's suicide attempt, which predated the assault by approximately five months, was relevant to the assault or how counsel's failure to elicit testimony regarding the suicide attempt prejudiced his defense. Therefore, Petitioner cannot establish that counsel was ineffective in this regard.

Finally, Petitioner argues that counsel was ineffective in failing to expose the perjured testimony of the emergency room nurse, Patricia Parent. As discussed above, Petitioner has failed to show that Parent testified falsely. Some of her trial testimony was not reflected in her written report. However, this omission does not render her trial testimony false. Defense counsel could have more directly questioned Parent regarding the omission in her report of a reference to multiple attackers. However, the prosecution did not dispute that the victim initially informed hospital staff that there had been a single attacker, George. The jury was informed several times from several different witnesses that the victim initially reported one attacker. Thus, counsel's failure to specifically question Parent regarding this omission in her report did not prejudice the defense. Accordingly, Petitioner has failed to show that his attorney was ineffective.

### G. Alleged Ineffective Assistance of Counsel on Collateral Review

Petitioner's tenth, eleventh, and eighteenth claims for habeas relief argue that the attorney who represented him in filing his first motion for relief from judgment in the trial court rendered

ineffective assistance. There exist no constitutional right to effective assistance of counsel during state collateral proceedings. *Coleman v. Thompson*, 501 U.S. 722, 752, (1991). Therefore, these claims are not cognizable on habeas corpus review.

### H. Failure to Sequester Witness Angela Alward

Petitioner argues that the trial court erred in not sequestering rebuttal witness Angela Alward. He appears to argue that she should have been sequestered because, less than a year before Petitioner's trial, charges were filed against Joshua Miller's father alleging that he sexually assaulted Alward. Petitioner fails to explain the relationship between Alward's charges against Joshua Miller's father and the need to sequester her.

A refusal to sequester witnesses until they testify is not a violation of due process. *See Bell v. Duckworth*, 861 F.2d 169, 170 (7th Cir. 1988); *Lewis v. Bell*, No. 05-CV-74202-DT 2006 WL 4557166, *26 (E.D. Mich. August 31, 2006); ("While sequestration of witnesses is a time-honored practice designed to increase the likelihood that testimony will be candid, it is not required by the due process clause."); *King v. Elo*, 2000 WL 791721, *10 (E.D. Mich 2000) (same); *Hammond v. Snyder*, 2000 WL 1239993, *5 (D. Del.2000) (same); *Gonzalez v. Quarterman*, 2007 WL 999019, *6 (W.D. Tex.2007) (same). "A federally issued writ of habeas corpus . . . reaches only convictions obtained in violation of some provision of the United States Constitution." *Smith v. Phillips*, 455 U.S. 209, 221 (1982). Because there is no due process right to sequestration of witnesses, Petitioner fails to allege a violation of the Constitution and this claim is denied.

## I. Admission of Petitioner's Statement to Police

In his thirteenth claim for habeas corpus relief, Petitioner argues that his custodial statement was improperly admitted into evidence because it was obtained in violation of his rights under the Fifth and Sixth Amendments. Following the first day of his preliminary examination, Petitioner gave a statement to Police Officer Gary Parks in which he detailed his version of what occurred on September 3, 1996.

Petitioner filed a motion to suppress his statement to Officer Parks. The trial court conducted an evidentiary hearing regarding Petitioner's motion to suppress pursuant to *People v. Walker*, 374 Mich. 331 (1965).[2] Officer Parks and Petitioner were the sole witnesses at the *Walker* hearing. Officer Parks testified that he was involved in investigating the assault of Christina Kaake. He attended the first day of Petitioner's preliminary examination on Friday, October 11, 1996. The next day, Officer Parks received a note from Petitioner asking to speak with Officer Parks. Officer Parks visited Petitioner on October 13, 1996, and asked Petitioner, "What can I do for you?" Tr., 5/6/97, p. 17. Officer Parks testified that Petitioner stated he wanted to tell Officer Parks what happened on the day of the assault. Officer Parks informed Petitioner that he should wait until the continuation of his preliminary examination, when his lawyer would be present. Petitioner stated that he did not care whether his lawyer was present. Petitioner was "adamant" in his wish to tell Officer Parks his story. Officer Parks testified that

---

[2]       *People v. Walker*, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

Petitioner proceeded to tell him his version of his actions on September 3, 1996.  Officer Parks

testified that he did not ask Petitioner any questions.

     Petitioner testified at the evidentiary hearing that he contacted Officer Parks on October

11, 1996 because Officer Parks had failed to fulfill a promise to Petitioner to assist him with a

personal bond, and because he wanted to find out the details of a deal the prosecution apparently

reached with Josh Miller.  Petitioner testified that, when Officer Parks came to visit him at the

jail, Officer Parks asked him several detailed questions about his involvement in the crime.

Petitioner testified that Officer Parks did not advise him of his constitutional rights prior to

questioning him.

     Following the evidentiary hearing, the trial court held that Petitioner's statement to

Officer Parks was admissible.  The trial court reasoned that Petitioner initiated communication

with Officer Parks, clearly did not want his attorney present, and was aware of his Fifth and

Sixth Amendment rights.  Further, the trial court held that Petitioner's statement was not the

result of police interrogation.  The court concluded the statement was therefore admissible.

     The Michigan Court of Appeals affirmed the trial court's holding that the statement was

admissible, stating, in pertinent part:

> Defendant first argues that the trial court erred in admitting into evidence
> statements defendant made to a police officer while in custody and finding that
> defendant did not want his attorney present during defendant's conversation with
> the officer.  Statements of an accused made during a custodial interrogation are
> inadmissable unless the accused voluntarily, knowingly, and intelligently waived
> his Fifth Amendment rights.  *Miranda v. Arizona*, 384 U.S. 436, 444-445 (1966) .
> . . *Miranda* warnings are not required, however, unless the accused is subject to a
> custodial interrogation. . . .

. . . We conclude that the officer's conduct did not constitute an "interrogation" triggering *Miranda* because there was no express questioning or a practice that the officer knew or reasonably should have known was likely to invoke an incriminating response. . . . Although defendant and the officer tell different stories regarding what was said during their conversation, defendant must be given to the trial court's findings as to witness credibility. . . . Accordingly, this incident did not constitute a custodial interrogation and the statements were not admitted into evidence in violation of defendant's Fifth Amendment rights.

We also find that defendant's Sixth Amendment right to counsel also was not violated.[1] To constitute an effective waiver of defendant's Sixth Amendment right to counsel it must be shown that defendant's waiver was knowingly, intelligently, and voluntarily given. . . .

Here, we find no evidence that defendant's statements were made involuntarily, or that he was coerced. Defendant initiated the conversation and does not argue that he was threatened or coerced in any way; indeed, he testified that Officer Parks did not intimidate him. Moreover, defendant was aware of his right to counsel because he was given *Miranda* warnings when he was arrested. . . . Notably, defendant's statements were made between the first and second days of his preliminary examination where he was present and represented by counsel, and the officer attempted to convince defendant to wait until the next preliminary examination hearing to discuss these matters, but defendant did not want to wait and did not want his attorney present. Accordingly, defendant's statements to Officer Parks were "knowingly" made with an appreciation of his rights. Again, although defendant's testimony regarding this conversation conflicted with Officer Parks' testimony, the trial court found the officer to be the more credible witness, and this Court will defer to the to the trial court's findings as to the credibility of witnesses. . . . Thus, based on the totality of the circumstances, including defendant's age and prior experience with law enforcement, we conclude that defendant knowingly and intelligently waived his Sixth Amendment rights.

_____

[1]A defendant's Sixth Amendment right to counsel "attaches only at or after the initiation of adversary proceedings against the accused by way of a formal charge, preliminary hearing, indictment, information, or arraignment." *People v. Bladel* (*After Remand*), 421 Mich. 39, 52; 365 N.W.2d 56 (1984), aff'd sub nom., *Michigan v. Jackson*, 475 U.S. 625 (1986). Here, defendant's Sixth Amendment right to counsel had attached because his preliminary examination was initiated before the conversation at issue.

*Curtis*, slip op. at 102.

In *Miranda*, the Supreme Court established that certain procedural safeguards must be employed in the context of a custodial interrogation to protect a defendant's Fifth Amendment privilege against self-incrimination. *Miranda*, 384 U.S. at 444. Those safeguards require informing a defendant "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires", or giving other equivalent warnings. *Id.* at 479. These procedural safeguards are "required not where a suspect is simply taken into custody, but rather where a suspect in custody is subjected to interrogation." *Rhode Island v. Innis*, 446 U.S. 291, 300 (1980). With respect to what constitutes interrogation warranting *Miranda* safeguards, the Supreme Court has held:

> "Interrogation," as conceptualized in the *Miranda* opinion, must reflect a measure of compulsion above and beyond that inherent in custody itself. [footnote omitted]
>
> We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response [footnote omitted] from the suspect. . . .

*Id.* at 300-01.

The trial court resolved the issue of credibility on this disputed factual issue as to whether Petitioner initiated the contact or whether the officer expressly questioned Petitioner in favor of the police officer. The "assessment of the credibility of witnesses is generally beyond the scope

of review" for a federal court on habeas review. *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

Consequently, this Court must defer to the state court's determination regarding the credibility of

the police officer's testimony that Petitioner initiated contact and was not subject to express

questioning. Therefore, the Court finds that the state court's finding that Petitioner was not

subject to interrogation was not contrary to or an unreasonable application of Supreme Court

precedent.

Although Petitioner initiated the conversation with Officer Parks, it is still necessary to

determine whether he validly waived his rights to counsel and to remain silent. *See Edwards*,

451 U.S. at 486 n. 9. Such a waiver must, in the totality of the circumstances, be knowing and

intelligent. *See id.* Officer Parks testified that Petitioner declined his offer to wait until the

preliminary examination to discuss these matters. In addition, Petitioner was advised of his right

to counsel when he was arrested and was represented by counsel. Therefore, it was reasonable

for the state court to conclude that Petitioner's decision to talk to Officer Parks without counsel

was voluntarily and knowingly made.

### J.  Amendment of Information

Petitioner claims that the trial court erred in permitting the prosecutor to amend the

information to include aiding and abetting after the prosecution presented its case in chief.

The Michigan Court of Appeals held that Petitioner was fairly apprised of the charge of

aiding and abetting before the information was amended, such that he was not unfairly surprised

or disadvantaged by the amendment to the information. The Michigan Court of Appeals

reasoned that, because the distinction between being a principal of a crime and an aider and

abettor to a crime had been abolished by statute, "it is not necessary for a prosecutor to charge a defendant in any other form than as a principle . . ., but a defendant may be charged as a principal and convicted as an aider and abettor." *Curtis*, slip op. at 3 (internal quotations omitted). The state court held that the amendment did not add a new offense, but simply added an additional count of the same offense. *Id.* The court then considered whether Petitioner had been prejudiced in his defense by the amendment. A defendant would be prejudiced by an amendment if it resulted in "unfair surprise, inadequate notice, or insufficient opportunity to defense." *Id.* (internal quotation omitted). The state court concluded that because state statute allows an aider and abettor to be charged as a principal, defendant had constructive notice that he could be charged and convicted as an aider and abettor. In addition, the state court concluded that Petitioner's defense, that he was telling the truth and the victim, Marsh, and Miller were not, would not have been altered by an earlier amendment to the information.

Petitioner has failed to show that the Michigan Court of Appeals' decision that he had notice of the aiding and abetting charge and that he was not prejudiced by the amendment to the information was an unreasonable determination of the facts in light of the evidence or contrary to or an unreasonable application of Supreme Court precedent. Thus, he is not entitled to habeas relief with respect to this claim.

### K. Prosecutor's Late Endorsement of Witnesses

Petitioner claims that the trial court abused its discretion in permitting the prosecution to endorse three witnesses, Vera Kaake, Justin Marsh, and Faye Marsh, just seven days before trial.

It is well-established that "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991), *quoting Louis v. Jeffers*, 497 U.S. 764, 780 (1990). The Sixth Circuit has held that "[i]n a federal habeas corpus proceeding, it is not the province of a federal appellate court to review the decision of the state's highest court on purely state law." *Long v. Smith*, 663 F.2d 22, 23 (6th Cir. 1981). Petitioners' claim, that the trial court abused its discretion in permitting the late endorsement of these witnesses, is a state law claim. *See Smith v. Elo*, 1999 WL 1045877, *2 (6th Cir. Nov. 8, 1999). Therefore it is not cognizable on federal habeas corpus review.

### L.  Testimony of Angela Alward

Petitioner next alleges that the trial court abused its discretion in permitting the prosecutor to call rebuttal witness Angela Alward. Ms. Alward testified that Petitioner had told her that the victim had a "big mouth" and that he "needed to get rid of her." Tr., 5/13/97, p. 74. Petitioner also told her that he would "throw [the victim] in the lake with bricks on her feet." *Id.* at pp. 74-75. The Michigan Court of Appeals held that this testimony was proper rebuttal evidence because it directly contradicted Petitioner's testimony that he was friendly with the victim. *Curtis*, slip op. at 5.

As discussed above, "'federal habeas corpus review does not lie for errors of state law.'" *Estelle,* 502 U.S. at 67. "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

Petitioner has failed to show that the admission of Ms. Alward's testimony denied him his right to a fair trial. Accordingly, he is not entitled to habeas corpus relief with respect to this claim.

## M.  Due Process

Finally, Petitioner argues that the trial court denied him his right to due process by excluding testimony under the Rape Shield Statute. The prosecution sought to introduce evidence that Petitioner, Marsh and Miller, several weeks prior to the alleged assault, attempted to convince Christina to prostitute herself at a local truck stop. Christina refused and filed a police report. The prosecution argued that this evidence supplied a motive for the assault. Defense counsel opposed admission of any testimony related to the prostitution-related incident. The trial court held that evidence related to this incident was more prejudicial than probative and that it presented significant concerns relating to the Rape Shield Statute and, therefore, ruled the testimony inadmissible.

At trial, the victim made a brief reference to the prostitution-related incident when, in response to the prosecutor's question asking why Petitioner was mad at her, she said, "I think it was because I called the cops on him for trying to make me a prostitute." Tr., 5/7/97, p. 92. The trial court immediately instructed the jury that they were to ignore that statement and not consider it as evidence in the case. The Court finds that this isolated reference was insufficient jeopardize the fairness of Petitioner's trial.

In addition, Petitioner argues that the trial court unfairly asked him what the prosecution witnesses' motives might be for lying. Petitioner claims that he was prevented from accurately

responding to that question because he was not permitted to reference the prostitution incident.

Given that the defense sought to exclude this testimony and it was excluded as unfairly

prejudicial to Petitioner, Petitioner's claim that he was prejudiced because he was unable to

reference the incident is meritless.

### V.  Conclusion

Petitioner has not established that he is in the State of Michigan's custody in violation of

the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


S/Arthur J. Tarnow
Arthur J. Tarnow
United States District Judge

Dated:  August 28, 2008


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record
on August 28, 2008, by electronic and/or ordinary mail.

S/Catherine A. Pickles
Judicial Secretary